ELMIRA LACKEY ET AL. v. ST. LOUIS & SAN FRANCISCO RAIL-
ROAD COMPANY.

[48 South. 238.]

RAILROADS. *Road bed.   Maintenance.   Overflow of land.   Adjustment
of past damages.   Altered construction.   Release of future dam-
ages.*

Where in the adjustment of a claim for past damages caused by
overflows of land, a railroad company makes alterations in its
road bed, and, in consideration thereof, the owner released it
from future damages caused by the operation of the road as al-
tered, and the alteration consisted partly in the cutting of a
ditch on its right of way and the company kept the ditch opened
for several years after the adjustment, the release does not
operate to relieve the railroad company from damages resulting
from a subsequent failure to keep the ditch opened.

FROM the circuit court of Lee county.

HON. EUGENE O. SYKES, Judge.

Miss Lackey and others, appellants, were plaintiffs in the court below; the railroad company, appellee, was defendant there. From a judgment in defendant's favor the plaintiffs appealed to the supreme court.

The plaintiffs were the heirs of W. L. Lackey, deceased, and the defendant the successor of the Kansas City, Memphis & Bir-mingham Railroad Company. See report of suit between plaintiffs' ancestor and the predecessor of the defendant, grow-ing out of the original construction of the railroad track and con-sequent overflowing of land, in the settlement of which the re-lease involved in this case was executed, *Kansas City, etc., R.*

*Co. v. Lackey,* 72 Miss. 881, 16 South. 909, 48 Am. St. Rep. 589.

The declaration charged that, when the defendant railroad company's predecessor built its line or railroad across the land described in the declaration, it was negligently and unskillfully constructed, so as to cause the lands and crops of the plaintiffs' ancestor to be overflowed by the waters of Town creek; that plaintiffs' ancestor, W. L. Lackey, brought suit against said defendant's predecessor and recovered a judgment on that account, and that same had been paid off and discharged; that thereafter plaintiff's ancestor and the defendant's predecessor railroad company entered into an agreement by which all past damages were settled for a cash consideration and certain alterations of the roadbed of said defendant were made, and in consideration of the alterations, said defendant's predecessor and its successors were thereby to be absolved from any liability for future damages on account of the overflow of said land, so long as they operated and maintained its railroad as then constructed; that on account of the failure of defendant to operate and maintain its railroad as constructed at the time of the execution of the release plaintiffs have been damaged, etc.

The defendant railroad company pleaded the release as absolving it from any further liability to Lackey, his heirs, assigns, executors, administrators.

The release contained the following provision: "And for the further consideration of the work done by said company at my request, as hereinbefore set forth, which work consists of the following: The closing up of trestle No. 216 on said land, and the cutting into a continuous ditch of the barrow pits on each side of the track, over and along said land, which work has been completed in each detail to my satisfaction, and in the manner prescribed and directed by me—for said consideration, and each of them, I do hereby release said Kansas City, Memphis & Birmingham Railroad Company, its successors and assigns, its officers and agents and employees, from all actions,

causes of action, suits, and damages of every nature whatso-
ever that have accrued to me on the said northeast quarter of
section 6, township 9, range 5 east, in said Lee county, Missis-
sippi, up to the date of this instrument, and for all that may
hereafter accrue to me on said land, on account of damage to
the same, all that the same may sustain in any way by reason
and during the continuance of the maintenance and operation of
said railroad thereover as the same is now constructed. This
release and the covenants herein shall be binding, not only
upon me, but my heirs, executors, administrators, and assigns,
and shall run with and be binding upon the land herein de-
scribed."

Plaintiffs' replication was predicated of the idea that the re-
lease absolved the railroad company from damages only so long
as said company continued to operate and maintain its railroad
bed as constructed at the time said release was executed, and that
the work agreed to be done as part of the consideration for said
release included the keeping open of the ditches on each side of
the track, and that it was the duty of said railroad company to
keep said ditches open to carry off water.

The defendant's demurrer to the replication was sustained,
and, leave to plead further not being asked, judgment final was
rendered for defendant.


*Anderson & Long*, for appellants.

The appellee contends that immediately upon the execution
of the release of W. L. Lackey, as set up in the pleading, that
it was absolved from any further liability to Lackey, his heirs,
executors and administrators. Appellants contend that the re-
lease is only from all past damage and from future damage so
long as the railroad company continued to operate and maintain
its railroad as it was then constructed at the time of the release,
and that the work named in the release, as having been done,
the filling up of trestle No. 216, was a part of the consideration
for the release, and that it was the duty of the appellee to keep

it filled up; if it washed out, it must be filled up again by the appellee, and that the cutting into a continuous ditch of the borrow pits on each side of its track, was a part of the consideration for the release, and that it was the duty of the appellee to keep the ditch cleared out from time to time as might be necessary in order to keep it in practically the same condition as they were at the time of the giving of the release. If the contract does not mean this, then that part of the release which . reads:

"And for all damages that may hereafter accrue to me, or to said land on account of damages to the same, or that the same may sustain in any way by reason and during the continuance of the maintenance and operation of said railroad thereover, as the same is now constructed;" means absolutely nothing whatever, and is mere surplusage in the release.

It is almost too familiar a principle of construction of contracts, that the instrument must be construed as a whole and' every part thereof, and every word therein, given its proper meaning if possible, to require a citation of authorities. However, we cite 17 Am. & Eng. Ency. Law (2d ed.) 7, and the authorities there cited; *Atkinson v. Sinnott,* 67 Miss. 502, 7 South. 289.

It is equally as well settled by law, that where a contract is ambiguous or of doubtful construction, that the court will take into consideration, the situation of the parties at the time of its making and the objects sought to be- accomplished by them. *Tufts v. Greenewall,* 66 Miss. 360, 6 South. 156; *Pratt v. Cotton Co.,* 51 Miss. 470; *Gillenwaters v. Miller,* 49 Miss. 150.

*J. W. Buchanan,* for appellee.

In construing this contract of release the court must consider what were the grievances of the party then suing.

It is clear from the contract that it was the intention of the appellee to get release for all past and future damages that might be caused by appellee's line of road being maintained

and operated over his land. The things that were done by the appellee for W. L. Lackey at the time were to close up trestle No. 216, connect certain *barrow* pits as shown by the replication and to carry the water by a ditch to Town Creek. Whether it was two hundred or six hundred feet, the record does not clearly disclose.

As to what is meant by the words "During the continuance of the maintenance and operation of said railroad thereover as the same is now constructed" is the proposition for this court to pass on, and to do so correctly it is necessary to bring the common custom and usage of railroads in the maintenance and operation of the same.

The complaint is that the appellee here did not keep open the ditches on each side of its right of way through the appellant's land nor the ditch that carried the water from the west side through another trestle over Town Creek. Did any court, or anybody ever see the right of way ditches cleaned out on each side of a railroad as a part of the maintenance and operation of the railroad? And do the words "Maintenance and operation of a railroad" refer to the side ditches or does it have reference to the roadbed, trestle, cattle gaps and things of that character?

If it had been the intention of the parties to that contract, for the railroad company to keep its ditches on each side of the track cleaned out, and the ditches off of its right of way to Town Creek open and cleaned out, so that the water could get into Town Creek, its contract would have said so.

Is this contract to be construed to mean something that it does not say, because some sectionman, without the knowledge or consent of his superior officers, kept for a time, part of the ditches along its right of way open, and thereby bind the railroad company not only to keep the ditches on its right of way or edge of its right of way open, but also to keep up and maintain the ditch from its right of way over to Town Creek? If such had been the intention of the parties it could easily have been inserted in this contract, which we maintain has never

been violated, and has been kept in good faith on the part of the appellee for a series of years, according to its very terms.

FLETCHER, J., delivered the opinion of the court.

We cannot agree with the learned court below that the contract between the appellee company and W. L. Lackey imposed no obligation upon the company to keep open the ditches which the contract mentions. It seems clear to us that, taking into consideration the situation of the parties, the mischief which was sought to be remedied and avoided, and the language of that part of the contract which recites that there is a release of all future damages that may accrue "on account of damage to the same and all that the same may sustain in any way by reason and during the continuance of the maintenance and operation of said railroad thereover as the same is now constructed," the company's duty demanded that the ditches should not be allowed to so fill up as to cause a recurrence of the trouble. It may be true, as ingeniously argued by appellee, that the language above quoted from the contract, if used in another connection, would be identical in meaning with the expression "proper construction and maintenance," as that term is employed in judgments rendered in condemnation proceedings; but we must construe the language in the light of this particular contract and the situation of the parties thereto. Certain it is that the contract would avail Mr. Lackey nothing, so far as future injuries are concerned, unless the ditches are kept open, and Lackey is without authority to go upon the railroad right of way for that purpose. Furthermore, weight must be given to the fact that for many years the company kept these ditches open, thereby giving a practical and contemporaneous construction to the contract in harmony with appellant's contention.

We are forced to conclude that the court erred in sustaining the railroad company's demurrer to the replication filed in answer to the second special plea, and the judgment is *reversed and case remanded.*